IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SONJU INDUSTRIAL, INC. and SI DEFENSE, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> PRECISE SOLUTIONS CORPORATION d/b/a EUROTECH ELITE, <br><br> Defendant. | CV 14–02–M–DLC <br><br> ORDER |

Defendant Precise Solutions Corporation, d/b/a Eurotech Elite, moves to dismiss Counts III and V-X of Plaintiff's complaint. Defendant also seeks dismissal of Plaintiff SI Defense, Inc. because it was not a party to the contract in dispute or a third-party beneficiary. Plaintiffs Sonju Industrial, Inc. and SI Defense respond that under Montana law, their tort claims survive and SI Defense is a third-party beneficiary to the contract. Defendant's motion will be granted as to SI Defense regarding Counts I-IV and denied as to dismissal of Plaintiffs' tort claims.

1

## I. Background

Sonju Industrial and SI Defense are Montana corporations and Eurotech is a Michigan corporation with its principal place of business in Florida. A minimum of $98,866 is at stake, so diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Sonju Industrial is an aerospace manufacturer that manufactures parts for the military, commercial aviation, firearms, medical, oil and gas, and semiconductor industries. Sonju Industrial developed sister corporation SI Defense in 2008 to produce rifles and related accessories and components. Sonju Industrial contracted with Eurotech to buy a Model B44SY2 Trofeo 11-Axis Universal Turning/Milling Center ("machine") on February 6, 2013. The machine was intended to assist in production of .223 and .308 caliber bolts and bolt components. The contract was governed by Eurotech's standard terms and conditions, an express warranty, and a guarantee. Sonju agreed to pay $494,033 for the machine with 20% down, 50% upon delivery, and 30% upon completion of "turnkey."

The parties agree that there were delays in the delivery and set-up of the machine and that the machine was never "turnkey" as contractually agreed upon. The parties also agree that Plaintiff SI Defense is not a named party to the contract, but Plaintiffs contend that it is a third-party beneficiary because both

parties understood that the agreement was to benefit SI Defense.

Sonju made a down payment of $98,866, but did not make the second or third payments. After two Eurotech engineers failed to get the machine running, Sonju formally rejected the machine by letter and email, arranging to have Eurotech remove the machine from Sonju's facility. Plaintiffs contend that Eurotech issued them a refund check once the machine was on the moving truck and out of Plaintiffs' facility at 4:00 p.m. on October 25, 2013. Eurotech then sent Sonju an email at 4:19 p.m. that same day, stating that the refund check was for the wrong amount, so it was going to cancel the check and send a new check by October 29, 2013. However, instead of sending a corrected check, Eurotech sent Sonju an invoice for $77,681.01 on October 29, 2013.

Plaintiffs filed their complaint in Flathead County on November 21, 2013, alleging the following: Count I Breach of Contract; Count II Breach of Express Warranty; Count III Third-Party Beneficiary Breach of Contract; Count IV Breach of Implied Covenant of Good Faith and Fair Dealing; Count V Negligent Misrepresentation; Count VI Constructive Fraud; Count VII Actual Fraud; Count VIII[1] Negligence; Count IX Tortious Interference with Contractual or Business

---

[1] Plaintiffs' complaint lists two Count VIIs and no Count IX, but the Court has corrected the error and refers to the second Count VII (Negligence) as Count VIII and Count VIII (Tortious Interference) as Count IX.

Relations; and Count X Punitive Damages. Defendant removed the action to this Court on January 3, 2014, and moved to dismiss various counts of the complaint and SI Defense as a party on January 10, 2014.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Commonly known as notice pleading, the standard for pleadings set by the Federal Rules dictates that, in order to be entitled to the presumption of truth, "a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice to enable the opposing party to defend effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Courts generally limit their considerations to the allegations in the complaint. *Twombly*, 550 U.S. at 555-559. Those allegations are accepted as true and viewed in a light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

When "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to

4

present all material made pertinent to such a motion by Rule 56." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider material properly submitted as part of the complaint without converting the motion to one for summary judgment. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). The Court may also consider "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.*

### III. Discussion

#### A. Third Party Beneficiary

Defendant argues SI Defense should be dismissed from the complaint because it was not a third party beneficiary to the contract. The parties agree that Florida law applies to the contract claims, Counts I-IV of the complaint. The parties disagree on what evidence the Court may consider in determining whether SI Defense is a third party beneficiary.

"If the intent of the contracting parties is not clear from the contract, the Court may consider extrinsic evidence of the parties' intent. Such evidence must establish that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties

unilaterally intended some benefit to the third party." *Rebman v. Follett Higher Educ. Group, Inc.*, 248 F.R.D. 624, 631 (M.D. Fla. 2008). The intent of the parties "is the key to determining whether a third party is an intended (*i.e.* donee or creditor) or only an incidental beneficiary." *Id.* at 630. Intent is generally specific and clearly expressed in the contract granting the third party contractual rights. *Id*. However, a third party need not necessarily be named in the contract to infer intent. *Steadfast Ins. Co. v. Corporate Protection Sec. Group, Inc.*, 554 F. Supp. 2d 1335, 1338 (S.D. Fla. 2008). If a third party not named in the contract is a member of the limited class intended to benefit from the contract, the third party may be a legal beneficiary.

When the precontract dealings and the allegations in the complaint show that the breach of contract deprives a third party of the benefit of the contract, the third party has a valid cause of action as an intended third party beneficiary. *Warren v. Monahan Beaches Jewelry Center, Inc.*, 548 So. 2d 870, 872 (Fla. App. 1989). In *Warren*, a woman who received an engagement ring that turned out to be a cubic zirconia stone instead of a diamond was held to be a third party beneficiary of the contract between her fiancée and the jewelry store because the salesperson knew the ring was for her and she brought the ring into the store after she received it. *Id.* Thus, the Florida Appellate Court held that the district court

improperly granted the jewelry store's motion to dismiss the fiancée because she was an intended third party beneficiary of the contract. *Id.*

Similarly, when "the precontract dealings, the contract itself, and the subsequent dealings between the parties show that the clear intent and purpose of the contract was to directly and substantially benefit" the third party, it is an intended beneficiary to the contract. *Goodell v. K.T. Enterprises, Ltd.*, 394 So. 2d 1087, 1089 (Fla. App. 1981). In *Goodell*, the contract indicated that the beneficiary and contracting party decided that the contracting party should take title, and also shipped the conveyor unit at issue to the beneficiary. *Id.* These facts were sufficient to support third party beneficiary status.

Here, Plaintiffs' complaint does not specifically mention SI Defense in Counts I or II. In Count III, Plaintiffs allege "Plaintiff SI Defense was an intended third-party beneficiary of the contracts entered into between Sonju Industrial and Eurotech because the parties knew and intended the equipment and parts it was to manufacture to benefit SI Defense." (Doc. 7 at 9.) Plaintiffs also allege in Count III that Defendant's breach of the written and oral agreements damaged SI defense. Both parties agree that SI Defense is not a party to the contract and is not specifically named as a third party beneficiary in the contract.

Plaintiffs argue that emails between its employee and Eurotech's as well as

7

the identifying information on the proprietary prints on which Eurotech based its engineering of the machine show both parties intended the machine and its use to benefit SI Defense. Defendant responds that the emails should not be considered under Rule 12(b)(6), but even if they are, they do not demonstrate the parties' intent for SI Defense to have third party beneficiary status. The Ninth Circuit standard of review applies to a 12(b)(6) motion even in diversity cases. That standard permits the Court to consider the complaint and attachments to the complaint. *Corinthian Colleges*, 655 F.3d at 999. It also allows for consideration of unattached evidence on which the complaint necessarily relies if the complaint refers to the document, the document is central to the plaintiff's claim, and authenticity is not in question. *Id.* Here, the emails to which Plaintiffs' refer are not mentioned in the complaint, and thus will not be considered in deciding Defendant's motion to dismiss. However, attachments A-J to Plaintiffs' complaint will be considered.

The allegations in the complaint regarding Defendant's knowledge that SI Defense was the intended beneficiary to the contract are conclusory and do not suffice to state a claim in and of themselves. Merely stating that both parties knew and intended SI Defense to be the third party beneficiary to the contract does not make it so. Some factual support is necessary, even at this stage in the

8

proceedings. *Twombly*, 550 U.S. at 555-56. The only factual allegation showing Eurotech knew SI Defense was involved relates to the parties' post-contractual dealings and is found within Sonju's letter rejecting the machine: "Sonju Industrial also mentioned the consequential damages it suffered as a result of Eurotech's failure to provide the equipment to specifications, including the loss of hundreds of thousands of dollars in contracts for both Sonju Industrial and SI Defense, irreparable damage to Plaintiffs' reputation and revenue . . . ." (Docs. 7 at 6; 7-8.) This evidence is not particularly supportive of Plaintiffs' third party beneficiary argument because the rejection letter was sent to Defendant several months after the contract was entered into, thus shedding scant light on the parties' contractual intent.

Because neither Plaintiffs' complaint nor the contract or supporting documents sufficiently allege a third party beneficiary claim as to SI Defense, it will be dismissed as to Counts I-IV, and Count III will be dismissed in its entirety. However, this dismissal will be without prejudice with leave to amend the complaint if Plaintiffs believe further factual allegations exist to support its third party beneficiary status.

### B. Tort Claims

Defendant next seeks dismissal of Plaintiffs' tort claims (Counts V-X) for

various reasons. The parties disagree as to which state's law applies to these claims, so the Court must first resolve this issue prior to reaching the merits.

### 1. Florida v. Montana Law

Tort claims generally are not controlled by a contractual choice of law provision. *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). "Rather, they are decided according to the law of the forum state." *Id.* Despite this, Defendant argues Florida contract law bars Plaintiffs' tort claims because it requires that a tort be factually independent of a breach of contract claim. Alternatively, Defendant contends Montana law also requires tort claims be factually distinguishable from alleged breaches of contract.

Montana law applies. Plaintiffs' tort claims are factually distinguishable from their breach of contract claims. Specifically, Plaintiffs' tort claims include extra-contractual facts such as Defendant's promises to repair the failed equipment, to remove the equipment free of charge, alleged misrepresentations regarding Defendant's competency to install and repair the equipment, and Defendant's cancelling of a refund check within minutes of the machine being loaded on a truck and away from the Plaintiffs' facility and replacement of the refund check with a nearly $80,000 invoice. These facts, taken as true and viewed in a light most favorable to Plaintiffs, provide independent support for Plaintiffs'

tort claims.

Montana law permits several different causes of action based on the same injury. *Corporate Air v. Edwards Jet Center*, 190 P.3d 1111, 1124 (Mont. 2008). "In common contract actions, tort-type damages are not available for breach of the implied covenant of good faith and fair dealing. They are, however, available for traditional contract-related torts such as fraud, fraudulent inducement, and tortious interference with a contract." *Id.* (citing *Story v. City of Bozeman*, 791 P.2d 767, 776 (Mont. 1990). The facts outlined above, particularly regarding the refund check, provide an independent basis for Counts V-VIII and these claims will not be dismissed on this basis.

### 2. Fraud Claim

Plaintiffs' fraud claims also survive Defendant's motion to dismiss. Defendant argues Plaintiffs' negligent misrepresentation, constructive fraud, and actual fraud claims fail because the complaint does not allege any representation of a past or existing fact.

Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to allege "the who, what, when, where, and how" of the fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The particularity requirement of

11

Rule 9(b) applies to state-law causes of action. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). When invoking a district court's jurisdiction under 28 U.S.C. § 1332, a plaintiff must plead the state law elements of a fraud claim. *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 663 n.2 (9th Cir. 1999) (citing *Moore v. Brewster*, 96 F.3d 1240, 1245-46 (9th Cir. 1996)).

Actual fraud can consist of a party to the contract making a promise without any intention of performing it. Mont. Code. Ann. § 28-2-405(4); *Dodds v. Gibson Products Co. of Western Montana*, 593 P.2d 1022, 1025-26 (Mont. 1979). Constructive fraud consists of "any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or any act or omission that the law especially declares to be fraudulent, without respect to actual fraud." Mont. Code Ann. § 28-2-406. Negligent misrepresentation consists of the following elements:

 a) the defendant made a representation as to a past or existing material fact;

 b) the representation must have been untrue;

 c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

d) the representation must have been made with the intent to induce the plaintiff to rely on it;

e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

f) the plaintiff, as a result of its reliance, must sustain damage.

*Harpole v. Powell County Title Co.*, 309 P.3d 34, 38 (Mont. 2013).

Plaintiffs' allegations regarding the cancelled refund check satisfy the requirements for actual fraud, constructive fraud, and negligent misrepresentation when taken as true and viewed in a light most favorable to them. The timing of the removal of the machine, the cancellation of the check, and the mailing of the invoice support Plaintiffs' allegations regarding intent. Even though Defendant is correct that Plaintiffs' specific allegations under Counts V-VII discuss Eurotech's representations regarding its competency, the allegations regarding the cancelled check are also within the complaint and the Court may consider them. Although *Twombly* requires some specificity in pleading that is more than labels and conclusions, it does not require complaints to be a model of organization and to plead those specific facts with precise accuracy as to each count. Thus, the Court finds that the allegations in the complaint suffice and Counts V-VII will not be

dismissed.

### 3. Negligence Claim

Liability in tort may coexist with contractual liability in certain circumstances. *Draggin' y Cattle Co., Inc. v. Addink*, 312 P.3d 451, 458-59 (Mont. 2013); *Billings Clinic v. Peat Marwick Main & Co.*, 797 P.2d 899, 908-09 (Mont. 1990).

> There is in truth sometimes a thin distinction drawn between whether an action is grounded in tort or a contract. Generally, the test of distinction seems to be that if the claim is based on a breach of specific terms of the contract without any reference to the legal duties implied by law upon the relationship created thereby, the action is in contract; whereas, if there is a contract for services which places the parties in such relation to each other that in an attempt to perform the promised service, a duty imposed by law as a result of the contractual relationship is breached, then the gravamen of the action is the breach of the legal duty rather than a breach of the contract, and so is a tort.

*Billings Clinic*, 797 P.2d at 908. In *Billings Clinic*, the Court found that "scissors more sharp than we command are required to pare away the contract implications from the tort claim" and held that the plaintiff's claims existed mutually in contract and tort. *Id*. at 909. Montana also permits a negligence action for economic loss without direct privity of contract. *Jim's Excavating Service, Inc. v. HKM Associates*, 878 P.2d 248, 253-55 (Mont. 1994). Defendant argues these Montana cases do not support Plaintiffs' negligence claim here because they deal

14

with professionals–in the accounting and construction fields–who are governed by different standards.

Although Plaintiffs' claims in this case sound more clearly in contract than in tort, they have alleged enough facts to support a negligence claim. The Montana cases in which the Court has permitted coexistent contract and tort claims are not so far afield from the facts here to warrant dismissal. Further, Montana law allows negligence actions by parties not in direct privity of contract with the defendant, allowing Plaintiff SI Defense a potential avenue for recovery if it is unable to establish third party beneficiary status. Plaintiffs have alleged that Eurotech owed them a duty to provide the equipment to specifications and to remedy its defective work on the equipment; that it breached its duties by failing to provide an adequate machine or remedy its inadequacies; and that Plaintiffs suffered damages because of the breach. As in *Billings Clinic*, it is not appropriate here, particularly at this stage in the proceedings, to attempt to sever Plaintiffs' contract and tort claims.

### 4. Tortious Interference

To state a tortious interference claim, Plaintiffs must prove the Defendant's acts: "1) were intentional and willful; 2) were calculated to cause damage to the plaintiff in his or her business; 3) were done with the unlawful purpose of causing

damage or loss, without right or justifiable cause on the part of the actor; and 4) that actual damages and loss resulted." *Emmerson v. Walker*, 236 P.3d 598, 603 (Mont. 2010). The factors considered to evaluate the propriety of a defendant's actions include: the nature of the conduct, motive, the interests of the parties, the social interests in protecting the freedom of action and the concomitant contractual interests, the proximity of the conduct to the interference, and the relations between the parties. *Id.*

Defendant contends Plaintiffs' tortious interference claim fails because they cannot prove Defendant intended to disrupt the business relations between them. Defendant further argues Plaintiffs should not be permitted to allege both that SI Defense was a known third party beneficiary and was a stranger to the Plaintiffs' business relations, the latter of which it contends is a required element of tortious interference.

Plaintiffs' claims regarding third party beneficiary and tortious interference are not inherently contradictory. Defendant reads the language from the cases regarding the interfering party being a "stranger" to the contract too literally. In *Emmerson*, the interfering party was intimately familiar with the contract between the plaintiff and defendant–his knowledge permitted him to effectively interfere with it. Plaintiffs allege that Defendant's actions of misrepresenting its ability to

provide satisfactory equipment, or to fix the deficiencies in the equipment, were calculated to cause damage to Plaintiffs' business relations with each other and various third parties. These allegations are adequate to state a claim under Montana's definition of tortious interference, and Defendant's motion will be denied as such.

### 5. Punitives

Because Plaintiffs' tort claims survive, so does their request for punitive damages. *Daniels v. Dean*, 833 P.2d 1078, 1084 (Mont. 1992).

### IV. Conclusion

Defendant's motion to dismiss will be granted in part and denied in part. The request to dismiss SI Defense as a party to Counts I-IV and to dismiss Count III altogether will be granted because Plaintiffs' allegations regarding the third party beneficiary claim are not supported by sufficient facts and are more akin to the legal conclusions couched as facts disallowed by *Twombly*. Defendant's motion to dismiss Plaintiffs' tort claims will be denied for the reasons set forth herein.

IT IS ORDERED that Defendant's motion to dismiss (Doc. 4) is GRANTED IN PART and DENIED IN PART. Plaintiff SI Defense is dismissed as to Counts I-IV without prejudice and Count III is dismissed without prejudice.

Defendant's motion to dismiss Counts V-X is DENIED.

DATED this 4th day of April, 2014.

Dana L. Christensen, Chief District Judge
United States District Court